**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JENNIFER TUSA, Individually, and** | § | |
| **On Behalf of the Estate of** | § | |
| **CHARLES KRUMM, JR., and** | § | |
| **CHARLES KRUMM, SR., Individually,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-cv-1149** |
| | § | |
| **ROBERT WEEMS,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Plaintiffs, JENNIFER TUSA, Individually, and on behalf of the Estate of CHARLES KRUMM, JR., and CHARLES KRUMM, SR., Individually, complaining of ROBERT WEEMS, and for causes of action will respectfully show unto the Court as follows:

> "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect."

*Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985).

> "Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer."

*Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021).

## SUMMARY.

On September 12, 2024, Montgomery County Sheriff's Deputy Robert Weems shot Charles Krumm, Jr. in the back killing him, as Charles ran away from Deputy Weems. At no time did Charles threaten Deputy Weems or any other person justifying the deadly use of force in this case. Following the use of deadly force, the Montgomery County Sheriff's Office gave a statement to the media that Deputy Weems shot Charles because Charles turned to face Deputy Weems and Deputy Weems was in fear for his life. However, eyewitness video clearly shows that Charles never turned around to face Deputy Weems and instead was facing away from Deputy Weems the entire time. Below is a screenshot of the moment that Deputy Weems shot Charles from behind.



Charles' parents now file this lawsuit against Defendant Weems for the wrongful death of their son and for violating their son's constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures, by way of excessive deadly force.

**I.**
**PARTIES**

1.    Plaintiff Jennifer Tusa is Charles Krumm, Jr.'s mother and is a resident of Harris County, Texas.

2.    Plaintiff Charles Krumm, Sr. (hereinafter referred to as "Mr. Krumm") is Charles Krumm, Jr.'s (hereinafter referred to as "Charles") father and is a resident of Schoharie County, New York.

3.    Defendant Robert Weems is an individual residing in Montgomery County, Texas and is a deputy with the Montgomery County Sheriff's Office and may be served at his place of employment at the Montgomery County Sheriff's Office located at 100 N Loop 336 W, Conroe, TX 77301, or wherever he may be found. Defendant Weems is being sued in his individual capacity.

**II.**
**JURISDICTION AND VENUE**

4.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

5.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because all of the causes of action accrued in the Southern District of Texas.

**III.**
**FACTS AND ALLEGATIONS**

6.    On September 12, 2024, Defendant Robert Weems, a deputy with the Montgomery County Sheriff's Office, used his department issued firearm to shoot Charles Krumm, Jr. ("Charles") in the back as Charles ran away on foot, killing him.

7.    When Defendant Weems shot Charles in the back, Charles was not suspected of a violent or even a felony offense, as Charles was simply being trespassed from a hotel where he was staying.

8.    When Defendant Weems shot Charles in the back, Charles was not threatening any person as he was running <u>away</u> from Weems and not toward any other person.

9.    When Defendant Weems shot Charles in the back, Charles was holding a case with a gun inside of it, but the case was not open and Charles never attempted to reach inside of the case or open the case; thus, Charles did not even have access to using the gun.

10.    That day, officers were called to a hotel to assist in the trespass of a person, Charles, who was asked to leave.

11.    Officers asked Charles to place his hands behind his back to be handcuffed.

12.    Charles responded by running away.

13.    Defendant Weems began chasing Charles.

14.    Charles picked up a closed case from his property while he was running away.

15.    Charles never opened the case.

16.    Charles continued running away from Defendant Weems.

17.    Defendant Weems pointed his firearm at Charles as Defendant Weems ran behind Charles.

18.    Defendant Weems fired his firearm multiple times shooting Charles in the back.

19.    Upon information and belief, evidence will show that Defendant Weems did not give Charles any warnings that the use of deadly force would occur.

20.    A witness that was filming the chase and can be heard in her video responded in shock and surprise when Defendant Weems shot Charles in the back, screaming "Oh my god, are

you fucking serious?!"[1] It was obvious that Defendant Weems was not justified in shooting Charles.

21.    Below is a screenshot of the moment that Deputy Weems shot Charles from behind, which shows Charles faced away from Defendant Weems as Charles was running away from Defendant Weems when Defendant Weems fired his weapon into Charles' back:



22.    Prior to Defendant Weems shooting Charles in the back, Charles had not turned toward Defendant Weems or any other officer chasing Charles.

23.    Prior to Defendant Weems shooting Charles in the back, Charles had not made any furtive gestures, hidden his hands, or reached to an area where a gun could have been hidden, as

---

[1] This video is attached to the Original Complaint as Exhibit A and fully incorporated herein.

he was simply running away from Defendant Weems and never put his hands in his pockets, near his waistband, or in any other area where a gun could be obtained.

24.     Prior to Defendant Weems shooting Charles in the back, Charles had not opened the closed case he was carrying.

25.     Accordingly, Charles never reached inside of the closed case.

26.     Defendant Weems shot Charles in the back while Charles was <u>facing away</u> from Defendant Weems and <u>running away</u> from Defendant Weems.

27.     Charles immediately fell to the ground after being shot by Defendant Weems.

28.     Charles died that day as a result of Defendant Weems shooting him from behind.

29.     At all times relevant to this lawsuit, Defendant Weems was acting under color of law as a deputy with the Montgomery County Sheriff's Office, as he was on duty, was in full law enforcement uniform, was responding to a call for service, and fired his department issued firearm, striking Charles from behind while running after Charles.

## IV.
## CAUSES OF ACTION

### Count One

### Excessive Deadly Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Weems

30.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

31.     Acting under the color of law, Defendant Weems deprived Charles of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of deadly force.

32.    Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983.

33.    The amount of force used by Defendant Weems against Charles as described above, specifically but not limited to, when Defendant Weems shot Charles in the back multiple times when Charles was not posing a threat of serious physical harm to Defendant Weems, other officers, or other people at the time, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, suffering, upon Charles.

34.    "To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was 'objectively unreasonable.'" *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

35.    Unquestionably, Charles suffered injuries that resulted directly from Defendant Weems' deadly use of force, as Defendant Weems shot Charles from behind, resulting in his death.

36.    In September of 2024, *Tennessee v. Garner* clearly established that "the use of deadly force violates the Fourth Amendment unless the officer[s] [have] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others." *Tennessee v. Garner*, 471 U.S. 1 (1985).

37.    Thus, the main question is whether Defendant Weems' conduct was objectively unreasonable turns on whether Defendant Weems had probable cause to believe that Charles posed a significant threat of death or serious physical injury to Defendant Weems or to others.

38.    In *Graham*, the Supreme Court stated proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing *Garner*, 741 U.S. at 8–9).

39.    Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *see also Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (observing that this "area is one in which the result depends very much on the facts of each case").

40.    According to the Fifth Circuit in *Cole*, "Garner also requires a warning before deadly force is used "where feasible," a critical component of risk assessment and de-escalation." *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), as revised (Aug. 21, 2019) (citing *Garner*, 471 U.S. at 11–12; see also *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021)*; Colston v. Barnhart*, 130 F.3d 96, 100 (5th Cir. 1997)).

41.    Existing Supreme Court precedent dictates that "courts must look at the 'totality of the circumstances' when assessing the reasonableness of a police officer's use of force." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Garner*, 471 U.S at 8–9.

42.    Here, Charles did not pose a threat of serious physical harm to any officer or other person immediately prior to Defendant Weems shooting him, as Charles did not point a weapon at any officer or other person, was <u>holding a closed case</u> in his hands and not a weapon, made no furtive moves or gestures, did nothing indicating he was going to use a weapon against any officers or others, was not headed toward the officers or others but instead was <u>running away</u> from officers, and did not threaten to shoot or harm the officers or any other person.

43.    Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer. *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir.

2021); *see Cole*, 935 F.3d at 453–54 (<u>finding clearly established violation of Fourth Amendment</u> <u>even when officer shot individual holding gun, but the gun was not aimed at the officer</u>).

44.     An officer cannot escape liability any time he claims he saw a gun. The question is whether the officer's belief that he saw a gun was sufficiently reasonable to justify the use of deadly force in light of all the surrounding circumstances. *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023).

45.     Additionally, no warnings were given to Charles that lethal force would be used which is a "a critical component of risk assessment and de-escalation." *See Cole*, 935 F.3d at 453; citing *Garner*, 471 U.S. at 11–12; see also *Poole*, 13 F.4th at 425; *Colston*, 130 F.3d at 100).

46.     Further, the video evidence is unambiguous as to the fact Charles did not turn to face Defendant Weems as stated by the Montgomery County Sheriff's Office. *See Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) ("[T]his is not a case of no evidence to counter the officer's testimony. It is a case in which evidence the Supreme Court has recognized as especially compelling could be viewed as contradicting the officer's testimony.").

47.     A reasonable officer would know that the use of deadly force by shooting Charles from behind was <u>clearly excessive</u> when engaging with suspects such as Charles when Charles had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away, and who was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted.

48.     A reasonable officer would know that the use of deadly force by shooting Charles from behind was <u>clearly unreasonable</u> when Charles had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or

physical threats, was running away, and who was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted.

49.    A reasonable officer in Defendant Weems' position would know that shooting Charles from behind when Charles had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away, and who was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted is clearly unreasonable and excessive—especially without any warning of lethal force.

50.    As a direct result of the force used against him by Defendant Weems, Charles has suffered serious physical injuries, pain and suffering, mental and emotional anguish, permanent physical disfigurement, and death.

51.    These injuries were not caused by any other means.

52.    Defendant Weems was acting under color of law as a deputy employed by the Montgomery County Sheriff's Office when he shot Charles, as he was on duty, in full law enforcement uniform, chasing after Charles to detain him, and then fired his department issued firearm, striking Charles from behind.

**Count Two**

**<u>Wrongful Death</u>**
**Against Defendant Weems**

53.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

54.    Plaintiff Jennifer Tusa is Charles Krumm, Jr.'s mother.

55.    Plaintiff Charles Krumm, Sr. ("Mr. Krumm") is Charles Krumm, Jr.'s ("Charles") father.

56.     By reason of Defendant Weems' wrongful conduct of fatally shooting Charles as Charles ran away without posing a reasonable, credible, or imminent threat to any person, Defendant Weems is liable for damages.

57.     To recover on a wrongful death claim under 42 U.S.C. § 1983, a plaintiff who has standing must show both (1) the alleged constitutional deprivation required by 42 U.S.C. § 1983 and (2) the causal link between the defendant's unconstitutional acts or omissions and the death of the victim.

58.     Defendant Weems' excessive use of deadly force against Charles, as described herein, violated Charles' constitutional right under the Fourth Amendment and caused his death.

59.     Defendant Weems' conduct that caused Charles' death was a producing cause of injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and Defendant Weems is liable for his acts and infliction of emotional distress caused by the wrongful death of Charles Krumm, Jr. in this case.

60.     Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

### Count Three

### <u>Survival Action</u>
### Against Defendant Weems

61.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

62.     Plaintiff Tusa brings this claim on behalf of the estate of Charles Krumm, Jr.

63.     Charles died because of Defendant Weems' wrongful conduct.

64.     Charles would have been entitled to bring this action if he had lived.

65.    The Decedent's right of action for wrongful conduct against the Defendant survives in favor of the estate of the deceased.

66.    Defendant Weems is liable to the Estate of the deceased for the loss of Charles Krumm, Jr.'s life, pain and suffering, and the violation of his civil rights.

67.    Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## V.
## PUNITIVE DAMAGES

68.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

69.    When viewed objectively from the standpoint of Defendant Weems, at the time of the occurrence, Defendant Weems' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

70.    As a direct, proximate, and producing cause of Defendant Weems' reckless or callous indifference to Charles' constitutionally protected rights, Plaintiffs are entitled to recover punitive damages against Defendant Weems.

## VI.
## DAMAGES

71.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

72.    Charles' injuries and death were foreseeable due to Defendant Weems knowing that shooting Charles from behind with his firearm had a high probability of killing Charles.

73.    Charles' injuries and death were directly and proximately caused by Defendant Weems' excessive use of deadly force against Charles.

74.     As a result, Plaintiffs are entitled to recover all actual damages allowed by law, including for the wrongful death of their son and on behalf of the Estate's survival claim.

75.     Plaintiffs contends Defendant Weems' conduct constitutes malice, evil intent, or reckless or callous indifference to Charles' constitutionally protected rights.

76.     Thus, Plaintiffs are entitled to punitive damages against Defendant Weems.

77.     As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiffs were forced to suffer:

   a.      Actual damages;

   b.      Loss of affection, consortium, comfort, financial assistance, protection, and care;

   c.      Pain and suffering and mental anguish suffered by Charles Krumm, Jr. prior to his death;

   d.      Mental anguish and emotional distress suffered by Plaintiffs;

   e.      Loss of quality of life;

   f       Funeral and burial expenses;

   g.      Loss of service;

   h.      Loss of earnings and contributions to Plaintiffs;

   i.      Prejudgment interest; and

   j.      Post judgment interest.

78.     Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiffs seeks to recover, and request the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

79.     If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demand attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

80.    Plaintiffs respectfully request a jury trial.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that judgment be rendered against Defendant Weems. Plaintiffs further pray for all other relief, both legal and equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
**JAMES P. ROBERTS**,
Texas Bar No. 24105721
**SCOTT H. PALMER**,
Texas Bar No. 00797196
**BREANTA BOSS,**
Texas Bar No. 24115768

**PALMER PERLSTEIN**
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
scott@palmerpelrstein.com
breanta@palmerperlstein.com

**Benjamin L. Crump, Esq.**
**Benjamin Crump Law, PLLC**
717 D Street NW, Suite 310
Washington, D.C. 20004
850.224.2020
Ben@bencrump.com

**ATTORNEYS FOR PLAINTIFFS**