**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Jennifer Tusa et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-25-1149 |
| | § | |
| Robert Weems, | § | |
| *Defendant.* | § | |

**MEMORANDUM AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 25. Pending before the court is Defendant's Motion for Summary Judgment, ECF No. 14. The court recommends that the Motion be **GRANTED**.

### 1. Background

On September 12, 2024, Montgomery County Sheriff's Deputy Robert Weems fatally shot Charles Krumm, Jr. (Krumm). Compl., ECF No. 1 at 2. Plaintiffs Charles Krumm, Sr. and Jennifer Tusa individually and on behalf of the Estate of Charles Krumm, Jr. sued under 42 U.S.C. § 1983 and the Texas wrongful death statute, alleging that Weems used excessive force in violation of Krumm's Fourth Amendment rights. *Id.* at 6–11.

The relevant events of September 12, 2024 are recorded in multiple videos and audio recordings. The parties both rely on the audio and video evidence and do not object to its authenticity, so the court considers it here. The court turns to the events as they appear in the evidence.

Police responded to a 911 call wherein a bystander reported that a man pointed a gun at two children. Weems Ex. 1, 911 Call, ECF No. 14-1. It is not clear that Weems knew the contents of the

911 call. Dispatch informed the responding officer, Officer 2221, that Krumm was likely the suspect and that officers had interacted with Krumm earlier in the day and found him "very difficult to deal with." Weems Ex. 3, Radio Call, ECF No. 14-3 at 0:00–0:10.[1]

Officer 2221 arrived and began attempting to engage with Krumm. Weems Ex. 2, Call Detail Report, ECF No. 14-2 at 3–4. Officer 2221 asked dispatch where the closest unit was; then, after dispatch asked Officer 2221 multiple times if she was secure without a response, Officer 2221 stated that she deployed her taser. *Id.* at 4; ECF No. 14-3 at 0:36–0:46. The officer then stated that she needed more units and asked for any available agent from any agency. ECF No. 14-2 at 4; ECF No. 14-3 at 0:50–1:13. Again, it is not clear whether Weems was privy to any of that radio traffic.

Weems appears to have been the second officer on the scene. The dashboard camera (dashcam) in Weems's car shows that, as Weems pulled up to the scene, Krumm was struggling with what appears to be Officer 2221. Weems Ex. 4, Dashcam Video, ECF No. 14-4. Krumm was resisting the officer's attempts to grab him. *Id.* Krumm then broke away from the officer and began running. *Id.* Weems pulled into the parking lot where the officer was chasing Krumm, and Krumm ran directly in front of Weems's car as Weems parked. *Id.*

Plaintiffs submitted a bystander video of the events that was posted on Instagram by "grizzyshoodnews." Bystander Video, ECF No. 20-1. The video shows that, as Weems parked and Krumm ran in front of Weems's car, Krumm appeared to pick up what turned out to be a gun from the ground nearby. *Id.* at 0:00–0:04.

---

[1] To cite specific portions of the video and audio recordings, the court includes the minutes and seconds from the time stamp on the video. For example, ECF No. 14-3 at 0:00–0:10, refers to the first ten seconds of the radio call audio recording.

The footage from Weems's body camera (bodycam) begins when Weems exited his car. Weems Ex. 6, Bodycam, ECF No. 14-6. The whole video, from exiting the vehicle to firing at Krumm, is seventeen seconds long. Weems exited his car and began running after Krumm with a taser in his hand. *Id.* at 0:00–0:09. The bodycam shows that Krumm stopped traffic as he ran across an intersection and the officers chased him. *Id.* at 0:06–0:10. Weems yelled "Stop!" and deployed his taser. *Id.* at 0:09–0:12. Krumm continued to run.

Krumm continued running through a parking lot toward a building. ECF No. 14-6 at 0:11–0:16. The video shows at least two cars driving within yards of Krumm as he ran through the parking lot. *Id.* Many other cars are parked in the lot. *Id.*



ECF No. 14-6 at 0:12 (taser being deployed and moving car nearby).



ECF No. 14-6 at 0:13 (gun inside bag/case and cars in parking lot).

As Krumm ran, he looked backward over his shoulder multiple times. ECF No. 14-6 at 0:12–16. Visible in Krumm's hand is what appears to be a gun wrapped in cloth or a bag.[2] *Id.* Weems yelled "Drop the gun now! Drop the gun now! Drop it!" 0:14–0:17. As Weems yelled "Drop the gun now!" for the second time, Krumm pulled both his hands in front of his body, obstructing Weems's view of the gun and Krumm's hands. *Id.* As Krumm pulled his hands in front of his body, he also turned his head to the left as if to look toward the officers behind him. *Id.* At least two moving cars

[2] Plaintiffs state that the gun was in a bag many times. ECF No. 20 at 3, 10–14. Plaintiffs also state that the gun was "inside of a **case** or bag" on a few occasions. *Id.* at 3 (emphasis added). It is not clear from the evidence which representation is correct.

4

were in the parking lot near Krumm and the officers at this time. *Id.*



ECF No. 14-6 at 0:16 (Krumm's hands obstructed from view, turning his head to the left, and a moving car in the background).

As Weems yelled "Drop it!"—the third such command—he fired two shots at Krumm, hitting him both times. ECF No. 14-6 at 0:16–0:17. Krumm fell to the ground and the bodycam video ends. The timestamp on the bodycam footage indicates that Weems shot Krumm at approximately 18:23:51. *Id.* at 0:16–0:17. At 18:24:06, the other officer reported shots fired to dispatch. ECF No. 14-2 at 5.

The bystander Instagram video aligns with the bodycam video, but it is blurry and does not depict all the events that transpired.

Weems filed a Motion for Summary Judgment arguing that he is entitled to qualified immunity. ECF No. 14. Plaintiffs argue

5

that multiple facts are disputed, including whether Weems knew the contents of the 911 call upon arriving on the scene, whether Krumm's gun was readily available for use, and whether Krumm brought his hands together prior to Weems's use of deadly force. ECF No. 20 at 2–3.

### 2. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have

6

a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

### 3. Qualified Immunity Standard

Weems argues that he is entitled to qualified immunity. ECF No. 11 at 9. Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983; *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). However, in a lawsuit under Section 1983, "[q]ualified immunity shields from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). State officials are entitled to qualified immunity unless (1) the evidence demonstrates that the official's conduct violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the violation. *McVae v. Perez*, 120 F.4th 487, 492 (5th Cir. 2024).

A right is clearly established when it "is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (en banc). "This is a 'demanding standard.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 753 (5th Cir. 2024). Courts "can analyze the prongs [of the qualified immunity test] in either order or resolve the case on a single prong." *Perry v. Mendoza*, 83 F.4th 313, 317 (5th Cir. 2023).

Where a defendant asserts qualified immunity as a defense to a claim, "the plaintiff bears the burden of pleading facts that

demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019). "Once an officer pleads qualified immunity, it is the plaintiff's burden to establish that the officer violated the plaintiff's clearly established federal rights." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023). At the summary judgment stage, a plaintiff bears the burden of showing a genuine and material dispute. *Perry*, 83 F.4th at 320. "A disputed fact is material if it could affect the outcome of the lawsuit." *Id.*

### 4. Analysis

The court recognizes the gravity of the events at issue in this case. Krumm's death is a tragedy. Even so, the court must continue its analysis as binding precedent from the Fifth Circuit and Supreme Court dictate.

Plaintiffs plead excessive force, a cause of action derived from the Fourth Amendment. ECF No. 1 at 6. "An excessive-force claim requires (1) an injury, (2) resulting directly and only from excessive force, (3) that was objectively unreasonable." *Argueta*, 86 F.4th at 1089.

At issue here is whether Weems's use of deadly force was excessive and unreasonable. To determine whether a use of force was reasonable, the court considers the facts and circumstances of the case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Claims that law enforcement unreasonably utilized deadly force are treated as a special subset of excessive force claims." *Aguirre v. City of San Antonio*, 995 F.3d 395, 412 (5th Cir. 2021). The Fifth Circuit has long held that, "[w]hen an officer uses deadly

8

force, that force is considered excessive and unreasonable 'unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021). The reasonableness of the use of deadly force is based on the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *Argueta*, 86 F.4th at 1089.

"[W]hether the suspect's flight posed a threat to the officers or onlookers is a question of law left to the court." *Argueta*, 86 F.4th at 1092–93. "Whether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force." *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). But even when a suspect is armed, a warning must be given, when feasible, before the use of deadly force. *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019). "Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer." *Poole*, 13 F.4th at 425; *see also Roque*, 993 F.3d at 333. The force an officer uses should be proportional to the threat, and an officer must use lesser force if an officer could reasonably do so. *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023).

In "furtive gesture" cases, the Fifth Circuit has held that an officer's use of deadly force is not unreasonable or excessive where a suspect "moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." *Argueta*, 86 F.4th at 1091 (citing *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009)). In *Argueta*, the suspect held a high-capacity semiautomatic weapon in his right hand, which he held out of view of the officers chasing him by "keeping his right arm purposefully and unnaturally pressed along his right side and out of sight as he ran away." *Id.* at 1092. The officer could not see that

9

the suspect was armed before using deadly force. *Id.* at 1090. The court held that "[the suspect's] clutching his right arm to his side as he fled at top speed was tantamount to 'mov[ing his arm] out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon.'" *Id.* at 1092. Thus, the suspect "engaged in a furtive gesture justifying deadly force." *Id.* at 1092–93.

In another case, the suspect was armed and fled in an attempt to evade arrest. *Wilson v. City of Bastrop*, 26 F.4th 709, 714 (5th Cir. 2022). There, the Fifth Circuit explained that when the suspect ran, "armed and disobeying [the officer's] commands to drop the gun despite the presence of onlookers, [the officer's] use of deadly force became justified." *Id.*

Fifth Circuit precedent dictates that Weems had at least probable cause to believe that Krumm posed a threat of serious physical harm. Thus, there is no material fact dispute as to whether Weems's use of deadly force was excessive or unreasonable. As the court described above, the bodycam video plainly shows that Krumm was actively attempting to evade arrest by flight. Weems's dashcam video shows that, as Weems arrived, Krumm appeared to be resisting arrest by dodging the officer on the scene. ECF No. 14-4. As Weems gave chase, Krumm ran across an intersection and parking lot where multiple cars were driving within feet of Krumm. ECF No. 14-6 at 0:00–0:16. As Krumm ran, he looked over his shoulder multiple times. *Id.* at 0:11, 0:13, 0:15, 0:16. In his right hand, Krumm was carrying a gun that appeared to be wrapped in something or inside a gun-shaped case. *Id.* at 0:11–0:14. Krumm's index finger was on or near the trigger. *Id.* Weems deployed his taser to stop Krumm, but it did not stop Krumm. *Id.* at 0:12. Weems warned Krumm to stop and drop the gun multiple times. Then, both of Krumm's hands disappeared from Weems's view. *Id.* at 0:16. Krumm ran, armed and disobeying

10

Weems's commands to stop and drop the gun, despite the presence of bystanders in the area. Weems had probable cause to believe that Krumm posed a threat of serious physical harm to himself and those in the area.

Plaintiffs argue that there are at least three genuine disputes of material fact that prevent the court from granting summary judgment in Weems's favor. First, Plaintiffs argue that there is a fact dispute as to what details, if any, Weems knew from the 911 call. ECF No. 20 at 2. The court finds that even if Weems did not know any details of the 911 call reporting Krumm, that fact is immaterial. *See Salazar-Limon v. City of Houston*, 826 F.3d 272, 278 (5th Cir. 2016) ("Unless Salazar has presented competent summary judgment evidence that he did not reach toward his waistband (for what Officer Thompson perceived to be a weapon), Officer Thompson's decision to shoot was not a use of unreasonable or excessive deadly force."). Weems's knowledge of what Krumm was doing before Weems arrived does not change the court's analysis. Weems knew that Krumm was fleeing, armed, and disobeying commands. As the Fifth Circuit has explained, by suspiciously concealing his hands as he fled in a way that objectively suggested he was armed and dangerous, he engaged in a furtive gesture justifying deadly force. *See Argueta*, 86 F.4th at 1093; *Wilson*, 26 F.4th at 714.

Second, Plaintiffs argue that there is a fact dispute as to whether Krumm's gun was clearly visible in Krumm's hand as he ran. ECF No. 20 at 2–3. Plaintiffs argue that the gun was inside a bag or case and not readily available to Krumm. *Id.* As the court explained above, even assuming in Plaintiffs' favor that the gun was in a case, Weems's use of force was still justified based on the furtive gesture analysis above. The Fifth Circuit has repeatedly cautioned against "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular

11

situation." *Wilson*, 26 F.4th at 713. The court "[has] never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon*, 826 F.3d at 279 n.6 (5th Cir. 2016) (collecting cases). Officers also need not wait until a fleeing suspect turns his weapon toward bystanders before using deadly force to protect them. *Wilson*, 26 F.4th at 714. In any event, the video plainly shows what looks like a gun and Weems obviously believed it was a gun because he was yelling for Krumm to "drop the gun."

Third, Plaintiffs argue that there is a material fact dispute as to whether "Mr. Krumm brought his hands together in front of his body and removed the bag that was covering the muzzle of the pistol." ECF No. 20 at 3. The bodycam video plainly shows that Krumm's hands were not visible to Weems when Weems shot Krumm. Thus, to the extent that Plaintiffs argue that there is a fact dispute about whether Krumm brought his hands together, that argument is unsupported by the evidence.

The court agrees, however, that there is no evidence showing that Krumm removed the bag covering the gun. It is not clear to the court whether Krumm could have used the gun while it was still inside the bag. However, that evidence is immaterial. As the court stated above, officers need not wait until the suspect turns toward them with a gun before applying deadly force. Plaintiffs do not cite any cases showing how, or otherwise explain why, the gun must have been removed from its bag or case before a reasonable officer could have probable cause to believe that Krumm's armed flight posed a threat to the officers or others.

Plaintiffs also generally assert that Krumm never "turned toward Defendant Weems or any other officer chasing Mr. Krumm" nor did Krumm make any furtive gestures or hide his

12

hands.[3] ECF No. 20 at 3–4. The evidence blatantly contradicts these arguments. Krumm looks behind himself multiple times as he runs, with gun in hand. ECF No. 14-6 at 0:11, 0:13, 0:15, 0:16. As the court has stated, and as the bodycam video shows, Krumm brought his hands together in front of him and out of Weems's view right before the shots were fired. *Id.* at 0:16.

The cases Plaintiffs rely on to support their arguments are all distinguishable. In *Poole*, the court found that "a jury could conclude Poole was visibly unarmed," and there was a fact question about whether the officer warned Poole prior to firing. 13 F.4th at 425. In *Cole*, officers "found themselves in a search for a suicidal teenager[,]" and there was a material fact question as to whether the officers warned the teen before using deadly force. 935 F.3d at 456–57. In *Allen*, which was at the motion to dismiss stage, the court found that Plaintiffs plausibly alleged that the officer knew that the suspect was unarmed and not aggressive and that the suspect never reached outside the officer's line of sight. 65 F.4th at 745. The circumstances here are materially different from each of these cases because Krumm was visibly armed,[4] he was fleeing through a public parking lot with occupied and moving cars, Weems attempted to use non-lethal means before firing his gun, Weems warned Krumm to stop and drop the weapon, and Krumm's hands were not visible to Weems at the time Weems fired.

Under the first prong of the qualified immunity analysis, there is no evidence or material fact dispute that Weems violated

---

[3] Plaintiffs cite to "ECF 15-1" on multiple occasions. *See* ECF No. 20 at 3–4, 10. The court notes that ECF No. 15-1 is a Proposed Order granting a Motion for Extension of Time filed by Plaintiffs. The court refers to Plaintiffs' only exhibit, the Instagram Bystander Video, as ECF No. 20-1.

[4] The Fifth Circuit has also distinguished *Tennessee v. Garner*, 471 U.S. 1 (1985), which Plaintiffs attempt to rely on to support their arguments, from cases where the suspect was armed. *Wilson*, 26 F.4th at 714.

Krumm's Fourth Amendment rights. As the court stated above, Fifth Circuit precedent dictates that, under these circumstances, Weems had probable cause to believe that Krumm posed a threat of serious physical harm to himself and those in the area. Weems had more information about the dangerous circumstances surrounding Krumm's flight and ability to cause serious physical harm than the officers in *Salazar-Limon* and *Argueta*, who were found to be entitled to qualified immunity. Weems's use of deadly force was not constitutionally excessive nor was it unreasonable.

Even if the evidence demonstrated that Weems's conduct violated a statutory or constitutional right, which it does not, Plaintiffs have not met their burden as to the second prong of the qualified immunity test. The court does "not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here, the cases that Plaintiffs offer are factually inapposite and did not provide Weems with any "fair notice that his conduct was unlawful." *See Elizondo et al. v. Hinote*, No. 25-40007, 2026 WL 311958, at \*2 (5th Cir. Feb. 5, 2026). Plaintiffs do not provide any evidence or case law showing that any constitutional question was "beyond debate." Also for the reasons stated in the court's analysis as to prong one above, there is no material fact dispute about whether Weems violated a right that was "clearly established" when he used deadly force. Accordingly, summary judgment should be granted as to Plaintiffs' excessive force claim.

### 5. Conclusion

The court recommends that Defendant's Motion for Summary Judgment, ECF No. 14, be **GRANTED**.

14

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on February 23, 2026.

_____
Peter Bray
United States Magistrate Judge

15